Judd and another vs. The Town of Fox Lake and others.

JUDD and another vs. THE TOWN OF FOX LAKE and others.

INJUNCTION: *Restraining assessment and collection of illegal tax.*

1. The decisions of this court in *Peck v. School District* (21 Wis., 516), and *Whiting v. R. R. Co.* (25 Wis., 167), as to equitable interference with municipal officers, approved, and the present case distinguished.
2. Where an unauthorized tax is assessed by town officers, money paid thereon under protest, or in consequence of a levy or distress of personal property, may be recovered back at law.
3. Where a tax, extended upon real estate, is invalid for any reason not apparent on the face of the proceedings, the owner may, at any time after such extension, maintain a suit in equity to remove the apparent lien of the tax as a cloud upon his title.
4. But the mere fact that the voters at a town meeting have voted an illegal tax, is not sufficient ground for enjoining the town officers from assessing or collecting the tax.
5. Equity will not interfere with public officers at the suit of a private person, until they have actually done some act in violation of plaintiff's legal rights or threatening him with irreparable injury.

APPEAL from the Circuit Court for *Dodge* County.

At the annual town meeting of the defendant town, in April, 1870, a motion was made, and, after being put to vote, was de-

clared by the chairman to be passed, and was entered by the town clerk upon the records of the meeting in the form of a resolution, as follows: "*Resolved*, That there be raised by tax for gravelling State street, between the Continental Hotel and the corner of State and Spring streets, near *Stoddard Judd's* house, $500." This action was brought by plaintiffs, resident tax-payers in said town, in their own behalf, and in behalf of all other such tax-payers similarly interested, against the town itself and the supervisors and clerk thereof, to restrain them from taking any steps to carry said resolution into effect, by doing any work, expending any money, or certifying, assessing or levying any tax in pursuance thereof. Besides the usual averment as to the interest of plaintiffs as tax-payers, and as to the intention of defendants to proceed in accordance with said resolution, the complaint alleges, in substance: (1) That the motion aforesaid did not in fact receive an affirmative vote of a majority of the legal voters present at said town meeting, and voting thereupon. (2) That the chairman of the meeting improperly refused to entertain a motion for a reconsideration, made after said resolution was declared to be passed. (3) That said State street, between the points named in said resolution, is within the incorporated *village* of Fox Lake, and that the *town of Fox Lake*, and its electors, have no authority to improve said street, or to levy any tax for that purpose.

Upon the complaint, verified, an injunctional order was granted. Afterwards the defendants demurred, on the ground, among others, that the complaint did not state a cause of action; and they also moved, upon the pleadings and upon affidavits, to dissolve the injunction, upon the ground, among others, that the complaint was without equity. Counter-affidavits were filed for the plaintiffs; but as the decision of this court does not seem to turn in any degree upon the questions of fact to which the affidavits relate, their contents need not be stated.

The court made an order dissolving the injunction; and the plaintiffs appealed therefrom.

*A. Scott Sloan*, for appellants, argued, among other things, that the remedy by injunction is the proper one (*Peck v. School District*, 21 Wis., 517); that equity will always interfere in such cases, when actual injustice will ensue or *the tax is wholly unauthorized* (*Mills v. Gleason*, 11 Wis., 497; *Warden v. Supervisors*, 14 id., 621); that the reason why courts are unwilling to restrain the collection of a *general* tax is the embarrassment and disorder of the public finances, and the injury to the public, which would follow; and that this objection would not affect the injunction here sought, which would merely prevent the town officers from *putting into* the general tax an item clearly unauthorized and void.

*J. H. Dawes* and *F. Hamilton*, for respondents, to the point that the complaint does not show any ground for the equitable interference of the court, even if the proposed tax would be illegal, cited *Van Cott v. Supervisors*, 18 Wis., 247; Laws of 1870, ch. 88; *Doolittle v. Supervisors*, 18 N. Y., 155.

[The briefs of the respective counsel discuss at length other questions which are raised by the record, but upon which it did not become necessary for this court to pass.]

DIXON, C. J. The motion here being equivalent to a demurrer to the complaint for want of equity or want of jurisdiction, the question presented is, whether the complaint states any sufficient ground of equitable cognizance, or for relief by the writ of injunction. The case differs from *Peck v. School District*, 21 Wis., 516, and *Whiting v. Railroad Company*, 25 Wis., 167, chiefly relied on by counsel for the plaintiffs, as also from any heretofore decided by this court. In *Peck v. School District*, a contract had, in fact, been entered into by the officers of the district with a third person, which was apparently authorized by law, but was, in reality, unauthorized, because no vote of a majority of the qualified voters had been given at the annual or any special meeting. It was held that equity had jurisdiction of the suit of a resident freeholder and

tax-payer to annul the contract thus purporting to bind the district, but which, in fact, if binding at all, bound only the officers who executed it, and to declare the same void as against the district and tax-payers.

In *Whiting v. Railroad Company*, the action was to restrain and prevent the execution and delivery of certain securities negotiable in their nature, and which, if executed and passed to the hands of *bona fide* holders for value, would become obligatory against the county notwithstanding their original infirmity, or the want of constitutional power in the board of supervisors to execute them. The instruments, when executed, would be apparently valid, the defect or want of power not being shown on their face. It was, therefore, a case of irreparable mischief or injury but for the interference of chancery, and the prevention of which constitutes one of its acknowledged heads of jurisdiction.

The other cases in this court where it has been held that chancery will interfere to stay proceedings for the collection of a tax, are all such as range themselves under another distinct head of equity jurisprudence. They were all suits in the nature of a bill *quia timet*, to remove a cloud from the title to real estate, where, upon the face of the proceedings to impose the tax, or by operation of law, the tax was an apparently valid lien on the land, and extrinsic evidence was required to show its invalidity. Under our statutes, a tax upon real estate becomes a lien thereon from the time of its assessment and extension upon the tax roll; and if, for any cause not apparent on the face of the proceedings, it is illegal, or invalid, the owner may, at any time after such assessment and extension, maintain his action to have the same adjudged invalid and to remove the cloud from his title.

But the present case differs materially from all these. It is not the case of an apparently valid contract entered into by the officers of the corporation, but which is in reality invalid by reason of some extrinsic defect; not one of the impending, un-

authorized execution and delivery by the officers of negotiable paper which, in the hands of a holder for value without notice, will become valid and obligatory against the corporation; and not one where any apparent lien has been created or cloud exists upon the title to real estate. It is, supposing the resolution of the voters in town meeting to have been unauthorized, and the proposed tax illegal, at most a mere anticipated or threatened invasion of the legal rights of the plaintiffs, which as yet has ripened into nothing injurious or detrimental to them at all, and perchance may never do so, but which, if it ever should, would not in its nature be irreparable, but might be redressed by the ordinary processes known to courts of law and equity. Should the officers of the town attempt to carry the resolution into effect, and assess a tax wholly unauthorized and illegal, as the complaint charges, the plaintiffs will have their action at law to recover back the money if paid under protest or on levy or distress of personal property; and if the same be extended against their real estate, they will also have their suit in equity to remove the supposed lien and cloud from their title. The complaint presents, therefore, the naked question, whether under such circumstances the aid of equity can be successfully invoked to declare in advance that certain acts of public officers, proposed or threatened in the future to be done, will, if performed, be illegal and void. We are clearly of opinion that it cannot. The general principle that equity possesses no power to revise, control, or correct the action of public, political or executive officers, or bodies, is of course well understood. It never does so at the suit of a private person, except as incidental and subsidiary to the protection of some private right, or the prevention of some private wrong, and then only when the case falls within some acknowledged and well defined head of equity jurisprudence. It is upon this principle that bills to restrain the collection of a tax have in general been dismissed. *Mooers v. Smedley*, 6 Johns. Ch., 28; *The Mayor v. Meserole*, 26 Wend., 132; *Wiggin v. The Mayor*, 9 Paige, 16; *Van Doran v.*

*The Same*, id., 388; *Life Insurance Co. v. The Supervisors*, 4 Duer, 192; *Heywood v. The City of Buffalo*, 14 N. Y., 534; *Susquehanna Bank v. Supervisors*, 25 N. Y., 312; *Dows v. Chicago*, 11 Wallace, 108, and cases there cited.

But there are other reasons why equity will refuse its aid in a case like this, and which are most ably pointed out in the opinions in *Doolittle v. Supervisors*, 18 N. Y., 155, and in *Sparhawk v. Railway Co.*, 54 Pa. St., 401. The grounds are too remote, intangible and uncertain, and the public inconvenience which would ensue from exercise of the jurisdiction would be enormous. It would lie in the power of every tax-payer to arrest all proceedings on the part of the public officers and political bodies in the discharge of their official duties, and, assuming to be the champion of the community, to challenge them in its behalf to meet him in the courts of justice to defend and establish the correctness of their proposed official acts before proceeding to the performance of them. A pretense more inconsistent with the due execution of public trusts and the performance of official duties could hardly be imagined. We refer the reader to the above opinions for a statement in full of the objections to this sort of jurisdiction, and of the reasons upon which they are founded. They are quite satisfactory to us so far as the case we are now considering is concerned, which is altogether like that of *Doolittle v. Supervisors*. It may be that the reasoning of Judge DENIO in the latter case goes somewhat farther than we are required to go in this, or than he or the court were required to go in that; and that in some respects it seems to conflict with the two decisions of this court first above referred to, namely, *Peck v. School District*, and *Whiting v. Railroad Company*. It must be remembered, however, that no case calls for any expression of opinion beyond the facts contained in the record, and that all beyond, whether said *arguendo* or by way of illustration, is not authority. No question was there presented or considered like those decided by this court, and we are not aware of any decisions in that

state in which the contrary has been held. Looking at that case, therefore, upon the facts presented and the real question involved, we fully assent to the correctness of the decision, and we see nothing in it in conflict with our own already made. In fact it will be found, we think, upon careful examination of that and the other cases above referred to in the court of appeals, *Heywood v. The City of Buffalo*, and *Susquehanna Bank v. Supervisors*, that there is no want of harmony between that court and this upon the questions which have been respectively considered by each.

It follows from these views that the order dissolving the temporary injunction, and from which this appeal is taken, must be affirmed.

*By the Court.*—Order affirmed.