Richard RITTER, Respondent,

v.

**ABBEY–ETNA MACHINE COMPANY, a foreign corporation, et al., Appellants.**

**No. C2–91–1940.**

Court of Appeals of Minnesota.

April 7, 1992.

Review Denied June 10, 1992.

Roger L. Kramer, Jardine, Logan & O'Brien, St. Paul, for respondent.

Jeffrey O. Knutsen, Cousineau, McGuire & Anderson, Minneapolis, for appellants.

Considered and decided by PETERSON, P.J., and NORTON and STONE *, JJ.

## OPINION

NORTON, Judge.

Appellants challenge the trial court's denial of their summary judgment motion. Respondent was injured in an industrial accident involving a steel tube mill. He sued the manufacturer, distributor and component manufacturer of the mill. The manufacturer moved for summary judgment, arguing the steel mill was an improvement to real property, thereby time barring Ritter's claims. *See* Minn.Stat. § 541.051, subd. 1 (1986). The trial court denied summary judgment and certified the question as important and doubtful.

## FACTS

Respondent Richard Ritter worked for Metal–Matic, Inc. in December 1987. Metal–Matic manufactures steel tubing which is used in making appliances, automatic equipment and farm implements. To manufacture the tubing, Metal–Matic uses six steel tube mills, each purchased and manufactured by appellant Abbey–Etna Machine Company (Abbey–Etna). The tube mills are installed in two bays, where an overhead crane loads the coils of steel onto the tube mill. The tube mill then forms the flat sheets of metal into a cylindrical shape, sizes the tubes, welds a seam, and cuts the tubes in particular lengths. On December 19, 1987, Ritter was operating one of the mills, when his left hand was drawn into the mill, causing serious injuries to his hand and arm. This mill had been manufactured and installed about 20 years earlier.

On December 18, 1989 Ritter sued Abbey–Etna, the distributor of the steel mill, and the component manufacturer, on the theories of negligence, strict liability and breach of warranties, and failure to warn. Abbey–Etna moved for summary judgment, arguing Ritter's claims were barred by the ten-year statute of repose for improvements to real property. Minn.Stat. § 541.051 (1990). The trial court concluded the tube mill was not an improvement to real property, and therefore denied Abbey–Etna's motion. The parties stipulated the question of section 541.051's application be certified as important and doubtful. The trial court concluded the issue was important and doubtful.[1] This appeal followed.

## ISSUE

Is the steel tube mill an improvement to real property and therefore subject to the statute of repose in Minn.Stat. § 541.051 (1986)?

## ANALYSIS

On appeal from summary judgment, it is the function of the reviewing court to determine whether there are any genuine issues of material fact and whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979).

Appellants argue the trial court erred as a matter of law by concluding the steel tube mill is not an improvement to real property. Instead, they contend Ritter's claims should be barred by the ten-year statute of repose for improvements to real property. The statute of repose provides:

> Except where fraud is involved, no action by any person in contract, tort, or otherwise to recover damages for [personal]

---

* *Retired judge of the district court, acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.*

1. An appeal from an order denying a summary judgment motion may be taken to this court when, as occurred here, the trial court certifies that the question presented is important and doubtful. Minn.R.Civ.App.P. 103.03(h).

injury * * * arising out of the defective and unsafe condition of an improvement to real property * * * shall be brought against any person performing or furnishing the design, planning, supervision, materials, or observation of construction or construction of the improvement to real property * * * more than ten years after substantial completion of the construction.

Minn.Stat. § 541.051, subd. 1 (1986).

Strict construction is appropriate in interpreting this statute. *Pacific Indem. Co. v. Thompson–Yaeger, Inc.*, 260 N.W.2d 548, 554 (Minn.1977). A determination of whether a defective product is considered to be an improvement to real property requires a "common sense" analysis. A reviewing court must give effect to the plain meaning of the statute of repose's language, utilizing no "technical legal construction." *Id.* The supreme court has employed a common-sense meaning of improvement to real property. An improvement is

> a permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs.

*Id.* (citing *Kloster–Madsen, Inc. v. Tafi's, Inc.*, 303 Minn. 59, 63, 226 N.W.2d 603, 607 (1975)). Based on this definition, we conclude the steel mill was not an improvement to real property.

We believe that in order for an improvement to be a permanent addition to or betterment of real property, it must be integral to and incorporated into the building or structure on the property. In *Sartori v. Harnischfeger Corp.*, 432 N.W.2d 448 (Minn.1988), for example, an overhead rail crane used in the crusher area of a mine facility was found to be an improvement. Significantly, the crane was connected to the crusher building by a rail transit system and a system of catwalks and platforms within the crusher building were constructed to use and maintain the crane.

*Id.* at 450; *see also Capitol Supply Co. v. City of St. Paul*, 316 N.W.2d 554, 555 (Minn.1982) (storm sewer system treated as an improvement); *Citizens Sec. Mut. Ins. Co. v. General Elec. Corp.*, 394 N.W.2d 167, 170 (Minn.App.1986), (light fixtures treated as improvement), *pet. for rev. denied* (Minn. Nov. 26, 1986); *Kemp v. Allis–Chalmers Corp.*, 390 N.W.2d 848, 850–51 (Minn.App.1986) (industrial plant's electrical transformer treated as improvement). Unlike an overhead crane, sewer system, light fixtures, or an electrical system, the steel tube mill, which is essentially production machinery, was not an integral part of Metal–Matic's building.

The history of Minn.Stat. § 541.051 buttresses our conclusion. The legislative intent in enacting the statute in 1965 was to eliminate suits against architects, designers, and contractors who have completed the work, turned the real property improvement over to the owner, and abandoned any interest or control over it. *See Sartori*, 432 N.W.2d at 454; *Calder v. City of Crystal*, 318 N.W.2d 838, 843 (Minn.1982). In 1977, the supreme court held the statute was unconstitutional on equal protection grounds because it granted immunity from suit to a certain class of defendants—architects, designers, and contractors—while excluding other persons, such as owners and material suppliers. *See Thompson–Yaeger*, 260 N.W.2d at 555. In 1980, the legislature amended section 541.051 by including "any person * * * furnishing * * * materials" to the list of individuals afforded immunity under the repose statute, *see* 1980 Minn.Laws ch. 518, § 2, and the supreme court in turn ruled the amendment remedied the constitutional infirmities. *Calder*, 318 N.W.2d at 843. Our review of the legislative history indicates the legislature intended to protect a narrow class of individuals—architects, designers, contractors and material suppliers—from exposure to indefinite liability for defects in design and construction of buildings. This class of individuals does not, however, include manufacturers of production machinery,[2]

---

**2.** We note the legislature in 1990 expressly excluded manufacturers or suppliers of any

where the machinery, like the tube mill, is not integral to and incorporated into the design of the building. Accordingly, the tube mill is not an improvement to real property and the trial court properly denied Abbey–Etna's summary judgment motion.

Additionally we believe *Condit v. Lewis Refrigeration Co.*, 676 P.2d 466 (Wash. 1984), is persuasive. In *Condit*, the plaintiff was injured while working on a conveyor belt which was connected to a freezer tunnel that processed frozen vegetables. The plaintiff sued the conveyor belt manufacturer, which in turn argued the suit was barred by the Washington statute of repose for improvements to real property.[3] The Washington Supreme Court concluded the statute of repose was intended to protect those who work on "structural aspects of the building but not manufacturers of heavy equipment or nonintegral systems within the building." *Id.* at 468. Further, the court stated that if manufacturers of nonintegral "production equipment" were included in the statute, product liability law would be disrupted. *Id.* at 468–69. We agree with the court's reasoning and therefore hold that Ritter's claims against appellants are not barred by section 541.051.

Finally, Ritter argues that even if Minn. Stat. § 541.051 bars his negligence and warranty claims against appellants, another claim, which alleged Abbey–Etna breached its ongoing duty to warn Ritter and his employer of possible danger from the tube mill, survives. *See Horvath v. Liquid Controls Corp.*, 455 N.W.2d 60 (Minn.App.1990), *pet. for rev. denied* (Minn. July 13, 1990). Because we hold section 541.051 does not bar Ritter's claims, we do not reach Ritter's duty to warn argument.

"equipment or machinery installed upon real property" from the ambit of Minn.Stat. § 541.-051. *See* 1990 Minn.Laws ch. 555, § 13. While this amendment would plainly undermine appellants' position, the amendment was not enacted until after Ritter's accident and is therefore not controlling.

**3.** The Washington statute of repose applies to claims

## DECISION

The trial court correctly concluded the tube mill was not an improvement to real property within the meaning of Minn.Stat. § 541.051. Hence, Ritter's claims against appellants are not time barred.

Affirmed.

against any person arising from such person * * * having performed or furnished any design, planning, surveying, architectural or construction or engineering services * * * for any construction, alteration or repair of any improvement upon real property. *Condit,* 676 P.2d at 467 (quoting Wash.Rev.Code § 4.16.300).